# 24-618

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

- against -

JAMES MACK a/k/a "Kiko,"

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK (HON. DAVID N. HURD)

# BRIEF FOR DEFENDANT-APPELLANT

EDELSTEIN & GROSSMAN
*Attorney for Defendant-Appellant*
501 Fifth Avenue, Suite 514
New York, NY 10017
(212) 871-0571
*Of Counsel: Jonathan I. Edelstein*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................. iii

Statement of Subject Matter and Appellate Jurisdiction ........................................... 1

Statement of the Issue Presented ................................................................ 1

Statement of the Case…........................................................................ 2

     A.    The Prior Case ...................................................................... 2

     B.    The Charges in This Case ........................................................ 3

     C.    The Suppression Motion ........................................................ 4

     D.    Relevant Testimony and Colloquies at Trial ....................................... 8

     E.    Sentencing and Judgment ...................................................... 14

Summary of the Argument ................................................................. 14

Argument…………….. ................................................................. 16

     POINT I

     THE DISTRICT COURT SHOULD NOT HAVE DENIED
     MACK'S SUPPRESSION MOTION WITHOUT A HEARING
     ON THE BASIS OF ITS OWN FILLING-IN OF THE
     BLANKS IN AN INCOMPLETE STATE COURT RECORD ................... 16

     POINT II

     THE DISTRICT COURT ERRED IN READING BACK
     ONLY EXCERPTS OF TWO DETECTIVES' DIRECT
     EXAMINATION, AND NOT THE CORRESPONDING
     CROSS-EXAMINATION, IN RESPONSE TO A JURY
     NOTE REQUESTING THEIR TESTIMONY ON A
     SPECIFIC TOPIC ........................................................... 24

i

Conclusion………… ...............................................................................30

Certificate of Compliance ...............................................................31

Judgments Appealed From…………… ....................................Addendum

# TABLE OF AUTHORITIES

**Cases:**

Chapman v. California, 386 U.S. 18 (1967) ....................................................28

Colorado v. Nunez, 465 U.S. 324 (1984) ..................................................17

Finetti v. Harris, 609 F.2d 594 (2d Cir. 1979) ....................................18,19

Franks v. Delaware, 438 U.S. 154 (1978) ...........................................*passim*

Kritsche v. Smith, 662 F.2d 177 (2d Cir. 1981) .......................................30

People v. Darden, 34 N.Y.2d 177 (1974) ..............................................6n

United States v. Barrera, 843 F.2d 1576 (10th Cir. 1988)........................19

United States v. Canfield, 212 F.3d 713 (2d Cir.2000) ...........................17

United States v. Chesher, 678 F.2d 1353 (9th Cir. 1982)........................18

United States v. Collins, 665 F.3d 454 (2d Cir. 2012) ................................25,26,28

United States v. Criollo, 962 F.2d 241 (2d Cir. 1992)............................28

United States v. Evans, 2008 WL 1858897 (D. Vt. 2008) ......................17

United States v. Falso, 544 F.3d 110 (2d Cir. 2008) ........................17,24n

United States v. Harris, 464 F.3d 733 (5th Cir. 2006)..............................22

United States v. Hernandez, 27 F.3d 1403 (9th Cir. 1994)........................28

United States v. Kyllo, 37 F.3d 526 (9th Cir. 1994)..................................18

United States v. Leon, 468 U.S. 897 (1984)................................17,18,24n

United States v. Levasseur, 816 F.2d 37 (2d Cir.1987)...........................17

United States v. McQuiller, 178 F. Supp. 3d 75 (W.D.N.Y. 2016)...................27,28

United States v. Mejia, 356 F.3d 470 (2d Cir. 2004)....................................25,29,30

United States v. Nickell, 883 F.2d 824 (9th Cir. 1989) ........................................28

United States v. Ramirez, 1997 WL 211294 (9th Cir. 1997) .................................28

United States v. Ronder, 639 F.2d 931 (2d Cir. 1981) ...........................13,15,25,26,
...........................................................................................................28,28n,29n

United States v. Tate, 524 F.3d 449 (4th Cir. 2008)............................................22,24

United States v. Yusuf, 461 F.3d 374 (3d Cir. 2006) .......................................21,21n

## Statutes and Rules:

18 U.S.C. § 922 ...........................................................................................4

18 U.S.C. § 924 ...........................................................................................4

18 U.S.C. § 3742 .........................................................................................1

21 U.S.C. § 841 ........................................................................................2,4

21 U.S.C. § 846 ...........................................................................................2

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1331 .........................................................................................1

Second Circuit Rule 30.1 ...........................................................................2n

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Defendant-Appellant James Mack, by and through the undersigned counsel, respectfully submits this brief in support of his appeal from (1) a Judgment of the United States District Court for the Northern District of New York (Hon. David N. Hurd, J.), entered February 29, 2024, sentencing him to an aggregate prison term of 180 months upon a jury verdict convicting him of possession with intent to distribute controlled substances, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm; and (2) a Judgment of the same Court and Judge, entered on the same date, revoking his supervised release in an earlier matter and sentencing him to a prison term of 37 months to run concurrently with the aforesaid 180-month sentence.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Defendant's appeal is as of right.

## STATEMENT OF THE ISSUES PRESENTED

1.    Did the district court err in denying defendant-appellant Mack's suppression motion without a hearing based on its own interpolation of an incomplete, non-verbatim record of testimony given in state court?

2.    Did the district court err in providing only excerpts of the direct examination of two government witnesses in response to a jury note rather than

1

also furnishing the corresponding parts of the witnesses' cross-examination?

Appellant submits that the answer to each of the above questions is "yes."

## STATEMENT OF THE CASE

### A.    The Prior Case.

On or about December 23, 2009, a Northern District of New York grand jury indicted appellant James Mack on one count of possessing with intent to distribute five or more grams of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (2009 Dkt. 8).[1]

On April 7, 2010, a superseding indictment was lodged against Mack charging him with conspiracy to possess with intent to distribute and distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine (21 U.S.C. § 846); attempted possession with intent to distribute of 500 grams or more of a mixture or substance containing a detectable amount of cocaine (21 U.S.C. § 846); and possession with intent to distribute of five or more grams of a mixture or substance containing a detectable amount of cocaine base (21 U.S.C. §§ 841(a)(1) and (b)(1)(B)). (2009 Dkt. 20).

---

[1] Appellant is proceeding on the original record pursuant to Local Rule 30.1(e)(1)(A), and will refer to documents from the electronic record of Northern District of New York case number 5:09-CR-00688-DNH as "2009 Dkt." and to documents from the electronic record of Northern District of New York case number 5:20-CR-00182-DNH as "2020 Dkt." Per Local Rule 30.1(e)(3), copies of the judgments appealed from are attached collectively as an addendum to this brief.

On February 8, 2011, pursuant to a plea agreement, Mack entered a plea of guilty to the cocaine base charge. (2009 Dkt. 79). Thereafter, on December 12, 2011, the district court (Hon. David N. Hurd, J.), sentenced Mack to a prison term of 77 months followed by six years of supervised release. (2009 Dkt. 78 at 18-19).

On December 15, 2011, judgment was entered in accordance with the district court's sentence. (2009 Dkt. 69).

On December 19, 2014, Mack was released from prison and his term of supervised release commenced. (2009 Dkt. 101 at 1).

On June 22, 2016, a revocation petition was filed against Mack alleging that he had been arrested for drug possession in Onondaga County, that he failed to report following that arrest, that he failed to notify his probation officer within 72 hours of his arrest, and that he failed to report for drug testing. (Id. at 1-2).

On June 29, 2017, Mack admitted guilt to all specifications of the revocation petition and was sentenced to 30 months' imprisonment with 48 months of supervised release to follow. (2009 Dkt. 108 at 1-3).

On November 15, 2018, Mack was again released from prison and returned to supervised release status. (2009 Dkt. 113 at 1).

## B.    The Charges in This Case.

On February 18, 2020, a criminal complaint was lodged against Mack in the Northern District of New York alleging that he possessed with intent to distribute

28 grams or more of a mixture or substance containing cocaine base (21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C)) and possessed a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)). (2020 Dkt. 1). The complaint alleged in pertinent part that on February 11, 2020, law enforcement obtained a search warrant for Mack's Syracuse apartment and for a 2004 Honda Accord and 2008 Honda Pilot registered to him. (Id. at 3-4, ¶ 7). On February 12, 2020, officers executed the warrant and allegedly found a hidden compartment or trap in the dashboard area of the vehicle containing cocaine, a loaded .38 revolver, $2900 in U.S. currency, and two digital scales with white powder residue. (Id. at 5, ¶ 8).

In addition, a second revocation petition was lodged against Mack in the 2009 case based on the same alleged conduct. (2009 Dkt. 113).

On or about July 15, 2020, a Northern District of New York grand jury indicted Mack on the two charges contained in the complaint as well as an additional charge of being a felon in possession of a firearm (18 U.S.C. §§ 922(g)(1) and 924(a)(2)). (2020 Dkt. 14).

## C.    The Suppression Motion.

On September 9, 2022, Mack moved to suppress the fruits of the search warrant pursuant to Franks v. Delaware, 438 U.S. 154 (1978) and its progeny, on the ground that, *inter alia*, the search warrant affirmant, Detective Ripley of the Syracuse Police Department, made false representations of fact concerning the

4

track record and quality of information provided by a confidential informant ("CI") who had assisted in the investigation. (2020 Dkt. 54).

In particular, the search warrant application alleged that beginning in August 2019, "information was received" from the CI "that a black male known as 'Kicko' … was actively engaged in the distribution of cocaine throughout Syracuse." (2020 Dkt. 54-1 at 5). Allegedly, the CI made controlled purchases from "Kicko," but none of these purchases were recorded on video or audio. (Id. at 5-6). The CI also identified a photo of James Mak as "Kicko" and stated that this was the person who sold him cocaine. (Id. at 6). Further CI information indicated that Mack "may secrete/hide/stash illicit drugs" in his apartment or car (id.), following which further investigation and surveillance showed that the 2004 Accord had apparently not been moved for several weeks and that Mack was surveilled briefly entering and exiting the Accord and then meeting with another individual (id. at 6-7).

Because so much of the application was based on CI information, it contained a representation that the CI's reliability had been "verified through prior police investigations which resulted in numerous controlled buys" and that the CI "ha[d] been providing investigative information to members of the Syracuse Police Department's Special Investigation Division, Narcotics Unit for several months." (2020 Dkt. 54-1 at 5).

However, at an ex parte, in camera Darden hearing held in connection with

related state court charges,[2] the CI gave testimony that contradicted the . (2020 Dkt. 54 at 3-4). The state judge, summarizing the in camera testimony, stated that the CI "testified that this particular incident in August 2019 was the first time he/she had provided information to the Syracuse Police Department regarding individuals engaged in the sales of illegal narcotics," although the CI had "seen drugs" before serving as an informant. (2020 Dkt. 54-3 at 2-3).

Mack accordingly argued that the warrant had been obtained based on material false information concerning the CI's reliability, in that the warrant affirmation described the CI as having been vetted when he had not been. (2020 Dkt. 54 at 5-6, ¶ 11). Mack further argued that, since none of the drug purchases the CI had allegedly made from him had been recorded, those purchases depended solely on the CI's word and did not provide an alternative basis to find him reliable. (Id.) Finally, Mack contended that, if the information from the CI were discounted, the search warrant did not provide the requisite probable cause to justify the search. (Id. at 6-7).

The government opposed the motion. (2020 Dkt. 55). The government argued that the state court's summary of the Darden hearing testimony was not a verbatim transcript and therefore "not a reliable source that should be used in

---

[2] A Darden hearing is a New York procedure to challenge the credibility of an informant, and under relevant state procedure, may be conducted in camera outside the defendant's presence. See People v. Darden, 34 N.Y.2d 177 (1974).

determining the veracity of Detective Ripley's warrant affidavit statements." (Id. at 4). Alternatively, the government contended that even if the CI did begin providing information to the Syracuse Police Department in August 2019, that did not necessarily contradict the search warrant application because Detective Ripley swore to the application in October 2019. (Id.)  The government thus argued that there was  a "three-month window" between August and October 2019 in which Detective Ripley might have obtained further confirmation of the CI's truthfulness and reliability. (Id. at 5).  In addition, the government contended that even if the CI first provided information regarding *narcotics* in August 2019, he might have previously provided information about other crimes and/or to police agencies other than the Syracuse Police Department. (Id.)  Finally, the government submitted that, due to the use of "numerous other investigative techniques," the CI's information was not critical to the establishment of probable cause. (Id. at 6).

By Decision and Order entered October 6, 2022, the district court denied the suppression motion without a hearing. (2020 Dkt. 56).  The district court, in essence adopting the government's argument, found that there was "no inconsistency" between the Darden decision and Detective Ripley's search warrant application due to the three-month period that elapsed between the CI first coming to Detective Ripley and the detective's use of the CI to conduct controlled buys. (Id. at 7). The district court also adopted the government's contention that the CI

*may* have provided information concerning other crimes and/or to other police agencies. (Id. at 7-8). Thus, the court determined that Mack "failed to make a substantial preliminary showing" that the search warrant application contained a material false statement by Detective Ripley, and therefore did not reach the issue of whether such statement was necessary to a finding of probable cause. (Id. at 8).

## D.     Relevant Testimony and Colloquies at Trial.

Trial began before the Hon. David N. Hurd of the United States District Court for the Northern District of New York on October 18, 2022, and concluded on October 21, 2022. (2020 Dkt. 113-116). At trial, evidence was presented concerning the execution of the search warrant, the location of the hidden compartment in the 2004 Accord, the materials recovered, the testing of the alleged cocaine base and firearm, and surveillance of Mack prior to the warrant being executed. The defense focused on gaps and discrepancies concerning the timing of the search, the manner in which it was done, absent and/or missing photographs and notes, and inconsistencies between the testimony of the officers who conducted the search. In particular, the defense focused on the absence of photographs of the hidden compartment or trap actually being located and opened, raising the possibility that the items allegedly found therein might have been moved there from another source. (2020 Dkt. 115 at 571-73, 575-77).

The discrepancies pointed to by the defendant arose, *inter alia*, from the

testimony of Detective Robert Ripley and Officer Christopher Cowan of the Syracuse Police Department.

Detective Ripley testified in pertinent part that on February 12, 2020, he was initially located in the rear area of Nob Hill, the development that included Mack's apartment building. (2020 Dkt. 113 at 144). He saw Mack leave the building and gave the go-ahead to stop Mack's 2008 Honda Pilot once it left the grounds of 111 Lafayette. (Id. at 148). After the stop occurred, Ripley personally made entry into the building along with other detectives. (Id. at 149-50). He was present for the search of Mack's apartment. (Id. at 150).

After the apartment was searched, Ripley went down to the 2004 Honda Accord where five officers were present. (Id. at 154). When he got there, the car looked like it had been searched, with the trunk and hood open and the central console also open. (Id.) There appeared to be "crumbs of beige chunky substance" on the floorboard near the center console and the rear passenger floorboard. (Id.) He subsequently discovered a "void or a secreted trap area in the center dashboard… within [which] was amounts of cocaine, crack cocaine, U.S. currency and a firearm." (Id. at 155).

Ripley identified photos including, *inter alia*, photos of the hidden compartment or trap, but stated that the photos were taken at a later date because photos taken at the time of the search were "misplaced." (Id. at 169). As such,

9

there were no photos of the trap being opened and/or the trap with items still inside, as opposed to later when they were "placed on the rear of the vehicle and spread out." (Id. at 171).

On cross-examination, Ripley testified that Sergeant Proud was the one who took the photos of the Accord that had been misplaced, and that Proud had been in charge of handling those photos. (Id. at 204). In contrast, the photos in evidence showed the car at a later time when it had already been torn apart. (Id. at 205). Indeed, they were taken years later, in May 2022. (Id. at 210, 212-13).

Ripley also acknowledged that the Accord had been searched thoroughly prior to his arrival for up to 20 minutes. (Id. at 206-07). Sergeant Proud was one of those who had searched the Accord in his absence. (Id. at 207). Proud already had access to the entire vehicle before Ripley arrived. (Id. at 208). Ripley didn't know if Proud searched the panels in the Accord before he got there. (Id.)

On further cross-examination and again on recross, Ripley stated that Proud was the one who observed a piece of cloth under the air bag and led to the discovery of the hidden compartment. (Id. at 209, 238). He didn't know if Proud was always accompanied by another officer throughout the day's events. (Id. at 238-39).

Ripley also testified on cross that, to his understanding, the search occurred after Officer Cowan observed Mack approach the Accord, get back into his Pilot,

and leave (id. at 223), which as Cowan later testified, he did not in fact see due to his (Cowan's) view being obscured (2020 Dkt. 114 at 251, 260). Mack had no drugs on him when the Pilot was stopped and he was arrested, even though Ripley had theorized that Mack's purpose in going into the Accord was to get drugs to sell someone. (2020 Dkt. 113 at 223-24).

Officer Cowan testified that on the morning of February 12, 2020, he observed Mack's 2008 Honda Pilot drive around and park next to the 2004 Accord. (2020 Dkt. 114 at 250). He saw the Pilot parked there for a few minutes and then leave. (Id. at 251). However, from where he was sitting, he "couldn't tell what was happening" and did not testify to seeing Mack enter or exit the Pilot and/or access the Accord. (Id.)

Cowan testified that shortly after this, he received word that the Pilot had been stopped, and that he then walked up to the Accord "to basically secure it for the purpose of a search warrant." (Id. at 252). The search team including Detectives Ripley and Voggel and Sergeant Proud arrived. (Id.) Sergeant Proud was taking photos during the search. (Id. at 253). Cowan also participated in the search, mainly relating to the trunk. (Id. at 254).

Cowan testified that his search of the trunk occurred when the trap had not yet been discovered. (Id. at 258). Afterward, according to Cowan, he, Ripley, and Proud talked about where a hidden compartment might exist and looked to see

11

where it could be. (Id.)  While he looked in the vehicle, Ripley and Proud found the trap and he observed photos being taken. (Id. at 258-59).

On cross-examination, Cowan acknowledged that during the period the Pilot was next to the Accord, his view of the Accord was blocked. (Id. at 260). He believed Detective Ripley was present for the entire search, and was more in the front of the vehicle. (Id. at 261-62). He admitted that he never saw the photos allegedly taken by Proud and didn't know where they were. (Id. at 263).

Notably, when Sergeant Proud testified, he acknowledged that he had been subject to discipline for mishandling evidence at a search warrant scene and being untruthful with a supervisor, and that four supervisors recommended that discipline be imposed but that he retired before the police chief could sign off. (2020 Dkt. 115 at 505, 509-13).

On October 20, 2022, summations were delivered and the jury was charged. The following day, October 21, 2022, the court received a note from the jury stating:

> Would it be possible to have the testimony of Officer Ripley's concerning the order of events getting into the Accord as well as Officer Cowan's testimony of the surveillance and the order of events getting into the Accord. Can we have clarity on the trap? Thank you, sir.

(2020 Dkt. 116 at 620).  The court advised the jury that there was no "clarity on the trap" that could be provided, because all the evidence had already been presented

12

and there were no photographs or measurements of the trap. (Id.) The court then, without affording counsel an opportunity to be heard, read back portions of Ripley's and Cowan's direct testimony. (Id.)

A sidebar then occurred (id. at 621), and while the colloquy at the sidebar took place off the record, it was subsequently put on the record that "defense counsel requested that the cross-examination [of Ripley and Cowan] be read, which was denied" (id. at 625).

Shortly thereafter, the jury came back with a verdict convicting Mack on all counts. (Id. at 622-24). Immediately after the verdict, Mack renewed his objection to the fact that the cross-examination had not been read back, noting that the jury "asked for testimony and I believe that that included cross-examination." (Id. at 626). The court noted defendant's exception but did not recall the jury and/or take any other corrective measure. (Id.)

Thereafter, Mack again renewed his objection by way of a Rule 33 motion, contending that the district court had failed to follow the procedure mandated by United States v. Ronder, 639 F.2d 931 (2d Cir. 1981) and its progeny, and that the cross-examination which had not been read back to the jury pertained to the discrepancies and inconsistencies in executing the search went to the heart of the defense case. (2020 Dkt. 82). The government opposed the Rule 33 motion (2020 Dkt. 83) and by order entered December 15, 2022, the district court denied the

motion, finding that it had not committed any procedural or substantive irregularities (2020 Dkt. 84).

**E.      Sentencing and Judgment.**

On February 14, 2014, Mack appeared for sentencing before the Hon. Hurd. (2020 Dkt. 111). Judge Hurd sentenced him to concurrent terms of 120 months on the cocaine base charge (for which 120 months was the statutory minimum term) and the felon-in-possession charge, followed by a 60-month consecutive term on the § 924(c) charge, resulting in an aggregate prison term of 180 months. (Id. at 9). At the same time, Judge Hurd sentenced Mack to 37 months on the supervised release violation in the 2009 case, to run concurrently with the 180-month sentence in the 2020 case. (Id. at 10-11).

On February 29, 2024, judgment was entered pursuant to the district court's sentence in the 2020 case (2020 Dkt. 101), and on the same date, judgment of revocation was entered reflecting the concurrent sentence in the 2009 case (2009 Dkt. 130). Mack filed timely notices of appeal in both matters (2009 Dkt. 129; 2020 Dkt. 100), and this appeal followed.

## **SUMMARY OF THE ARGUMENT**

1.      The district court erred in denying Mack's <u>Franks</u> motion without a hearing. The state court's summary of the CI's <u>Darden</u> testimony raised at least a prima facie likelihood that Detective Ripley had made a material false statement

14

concerning the CI's reliability. The district court improperly "resolved" that discrepancy by speculating about what the CI's <u>Darden</u> testimony *might* have been and/or ways the CI's history *might* have been consistent with Detective Ripley's affirmation, essentially filling in the blanks of the <u>Darden</u> hearing in the light most favorable to the government. Defendant submits that it was improper for the district court to engage in this type of speculative interpolation and that, upon being presented with a prima facie discrepancy, the court should have conducted a hearing at which live testimony from Ripley and/or the CI could be taken subject to cross-examination.

2.     The district court improperly resolved the jury's request for readbacks of certain testimony when it denied Mack's request for the corresponding parts of the witnesses' cross-examination to be read back in conjunction with their direct examination.  Because the district judge permitted objections to be made only after conducting the readback, it did not properly follow the procedure mandated by <u>United States v. Ronder</u>, 639 F.2d 931 (2d Cir. 1981) and its progeny. Further, the language of the jury note indicated that the jury wanted all the testimony of Detective Ripley and Officer Cowan regarding the car search, not just the direct testimony, meaning that the readback was not responsive to the note. Moreover, because the cross-examination that Mack asked to be included in the readback contained inconsistencies going to the heart of his defense – including the order in

which the car was searched, whether Detective Ripley was present throughout, whether it was Detective Ripley or Sergeant Proud who allegedly found the hidden compartment, and whether Sergeant Proud was ever by himself in a position to tamper with the evidence – the failure to include the cross-examination was highly prejudicial and should result in reversal.

## POINT I

### THE DISTRICT COURT SHOULD NOT HAVE DENIED MACK'S SUPPRESSION MOTION WITHOUT A HEARING ON THE BASIS OF ITS OWN FILLING-IN OF THE BLANKS IN AN INCOMPLETE STATE COURT RECORD

Mack first contends that it was error to deny his Franks motion without a hearing. Mack's motion papers, supported by findings of fact from a state court judge, made a sufficient "significant preliminary showing" that Detective Ripley had misrepresented a material fact which was key to the CI's reliability. Moreover, Mack showed that the CI's information was central to the search warrant application and that the misrepresentation was thus key to the issuing magistrate's determination of probable cause. The district court was thus required to hold a hearing, and certainly should not have denied a hearing based on invention of possible facts which favored the government.

Under Franks v. Delaware, 438 U.S. 154 (1978) and its progeny, "a district court may not admit evidence seized pursuant to a warrant if the warrant was based

16

on materially false and misleading information." <u>United States v. Levasseur</u>, 816 F.2d 37, 43 (2d Cir.1987). A defendant is entitled to a Franks hearing if "he makes a substantial preliminary showing that an affiant knowingly and intentionally, or with reckless disregard for the truth, included in a warrant affidavit a false statement necessary to the finding of probable cause." <u>Colorado v. Nunez</u>, 465 U.S. 324, 326-27 (1984). If, at a hearing, the defendant proves by a preponderance of the evidence that the misrepresentations and/or omissions were made intentionally or recklessly, and that they were necessary to the probable cause determination, "the search warrant must be voided and the fruits of the search excluded." <u>See</u> <u>United States v. Evans</u>, 2008 WL 1858897, *4 (D. Vt. 2008), <u>citing</u> <u>United States v. Canfield</u>, 212 F.3d 713, 717-18 (2d Cir.2000).

The term "substantial preliminary showing" has no precise definition, but the courts have given some guidance on what goes into a showing being "substantial" as opposed to conclusory:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

<u>United States v. Falso</u>, 544 F.3d 110, 127 (2d Cir. 2008), <u>citing</u> <u>United States v.</u>

Leon, 468 U.S. 897 (1984) and Franks, 438 U.S. at 171. Notably, it is only at the hearing stage that the defendant is required to prove his claim of deliberate falsity or recklessness by a preponderance, and therefore, "clear proof is not required" at the pleading stage, but instead only a preliminary showing. See United States v. Kyllo, 37 F.3d 526, 530 (9th Cir. 1994), quoting United States v. Chesher, 678 F.2d 1353, 1362 (9th Cir. 1982).

In this case, the above factors were present. Appellant Mack alleged that Detective Ripley deliberately or recklessly misled the magistrate who issued the search warrant by claiming that the CI had a long track record of reliability when in fact he did not. Mack specifically pointed out which part of the warrant affidavit he claimed to be false. He made an offer of proof based on a decision by a state judge – whose rulings enjoy a presumption of regularity, see Finetti v. Harris, 609 F.2d 594, 599 (2d Cir. 1979) – which summarized the CI's testimony in a way that at least suggested that he was a neophyte informant who did not have a proven track record. And certainly, Mack adequately explained the absence of an affidavit from the CI, given that the state-court Darden hearing had been held outside his or his counsel's presence and that he had no knowledge of who the CI was or how to contact him.

Given the above, none of the district court's reasoning was sufficient to warrant denial of a Franks hearing. As discussed above, the district court first

18

noted that the state court's <u>Darden</u> decision did not set forth the CI's testimony verbatim – but given the presumption of regularity enjoyed by state court decisions, <u>see</u> <u>Finetti</u>, <u>supra</u>, it must be presumed that the state judge accurately recounted the sum and substance of that testimony. Moreover, given that the issues before a New York judge on a <u>Darden</u> hearing explicitly include the credibility of a CI, the state court presumably included those details of the CI's in camera testimony that were important to that determination. Information adduced at an in camera hearing may supply the preliminary showing necessary to obtain a <u>Franks</u> hearing, <u>see</u> <u>United States v. Barrera</u>, 843 F.2d 1576, 1580 (10th Cir. 1988), and if anything, the fact that the <u>Darden</u> decision did not constitute a full verbatim record meant that there was *more* to be explored at an evidentiary hearing, not less.

The district court then noted the "three-month window" between August 2019 when the CI first provided information on drug trafficking to the Syracuse police and when the investigation of Mack began. But the warrant application made clear that "[t]his investigation was *initiated during the month of August 2019*, when C.R.I. information was received that a black male, known as 'Kicko' … was actively engaged in the distribution of cocaine throughout the City of Syracuse." (2020 Dkt. 54-1 at 5) (emphasis added). Moreover, further information critical to the conduct of the investigation, including that "[t]his male was said to utilize vehicles to transport and distribute cocaine" and that he was "also known to meet

customers in various locations throughout the City of Syracuse" was also provided in August 2019 when the CI was admittedly a first-timer, rather than three or more months later. (Id.)

Given these allegations, the search warrant affidavit was, at minimum, misleading about the CI's track record, stating that the CI "has been verified through prior police investigations which resulted in numerous controlled buys" and had been "providing investigative information to members of the Syracuse Police Department's Special Investigation Division, Narcotics Unit, for several months" without ever informing the issuing magistrate that the investigation was *initiated in the first place* by a CI who was then unproven and unvetted. The "three-month window" cited by the district court does not, and cannot, cure that.

Finally, we come to the district court's final reasoning for denying a Franks hearing – its adoption of the government's contention that the CI *might* have been further vetted between August and October 2020 and that he *might* have provided information concerning other crimes and/or to other police departments. There is nothing in the search warrant affidavit or any attachments thereto that supports any of these conclusions. Instead, they are pure guesswork. In essence, the government urged the district court – not based on any source, but only on "lawyer talk" in the memorandum in opposition to the motion – to fill in the blanks of the search warrant affidavit and/or the CI's Darden testimony in the light most favorable to

20

the government, and the court did so.

Research does not reveal any case law endorsing this type of speculation –
i.e., permitting a district court to deny a <u>Franks</u> hearing based on conjecture that
there *might* be additional evidence out there consistent with the search warrant
affidavit. Certainly, neither the government's memo in opposition nor the district
court's decision cited any cases supporting this practice. And in at least one case,
<u>United States v. Yusuf</u>, 461 F.3d 374, 388 n.12 (3d Cir. 2006), the court held that it
was improper for a district court to "correct" a search warrant affidavit as part of
the <u>Franks</u> analysis, finding that "[i]f we were to 'correct' the affidavit as
suggested by the Government, we would not only be infusing extraneous
information into the probable cause determination, but we would also allow the
Government to receive the benefit of its misconduct."  The <u>Yusuf</u> court noted
further that the government should not get the benefit of information that "*would
have been sufficient* to establish probable cause had it been contained in the
original affidavit." <u>Id.</u> (emphasis in original).  If so, then it is even more improper
to "correct" a search warrant affidavit by filling in the blanks in a way that does
not even incorporate additional information but instead is based on speculation
about information that *might*, but also might not, exist.[3]

---

[3] The <u>Yusuf</u> court ultimately found that the defendant did not prove by a
preponderance that the search warrant affiant made a deliberate or reckless
misrepresentation, but it had the benefit of a full <u>Franks</u> hearing where the affiant

Similarly, in United States v. Harris, 464 F.3d 733, 739 (5th Cir. 2006), the court held that the government could not defeat a Franks hearing by providing a supplemental affidavit from the original affiant that contained clarifying information. The Fifth Circuit held that information not contained in the original affidavit, even if sworn to by the officer who obtained the warrant, was "beyond the [district] court's analytical reach" in considering a Franks motion. See id. Again, how much more true in this case where the blanks in the record were filled in, not even by an affidavit, but by "lawyer talk" from the government which was then adopted wholesale by the district court.

The Fourth Circuit has also frowned on the type of exercise the district court conducted in this case. In United States v. Tate, 524 F.3d 449, 456 (4th Cir. 2008), the court held that where (1) a search warrant affidavit omitted any reference to trash bags having been brought to the curb for pick-up, and (2) evidence existed suggesting that the trash bags were not at the curb, the fact "that the trash bags at issue here *may* in fact have been in a location consistent with their being abandoned for collection" did not warrant denial of a Franks hearing.

Accordingly, this Court should find that the district court improperly used speculation to fill in the blanks of the search warrant affidavit and the Darden

---

testified under cross-examination and explained the apparent discrepancy, which of course the district court in this case did not.

record, and that Mack's moving papers in fact made a substantial preliminary showing that Detective Ripley knowingly or recklessly misled the issuing magistrate about the CI's track record and reliability.

Moreover, the misleading part of the search warrant affidavit was also critical to a finding of probable cause. It is indisputable that the obligation of a search warrant affiant "extends to providing facts concerning the reliability of the information and the credibility of its source and to avoiding deliberately or recklessly false statements." Franks, 438 U.S. at 165. And in this case, the CI's reliability was absolutely critical. As Mack pointed out in the papers below, not only did the original information about Mack's identity as "Kicko," his alleged drug trafficking, and his modus operandi (including the use of vehicles) come from the CI, but the controlled buys allegedly conducted from Mack were not recorded and were thus entirely dependent on the CI's word as to what took place. (2020 Dkt. 54-1 at 5-6, 7-8). Moreover, the "other investigative techniques" cited by the government, specifically surveillance, proved at most, that Mack drove his car and met with another person in a way Detective Ripley viewed as suspicious, but *did not* yield any direct evidence of drug sales or even of hand-to-hand exchanges of merchandise. (Id. at 7). Without the information provided by the CI, there would not have been nearly enough evidence to go to the state court and obtain a warrant to search Mack's home, person and vehicles – indeed, there would have been little

more than supposition. See Tate, 524 F.3d at 457 (where affiant omitted material information regarding investigation of trash bags and where, "[w]ithout the facts drawn from the trash investigation, the remaining contents of the affidavit would not have supported a finding of probable cause," a Franks hearing was required).

Accordingly, on this record, Mack made the requisite "substantial preliminary showing" as to both prongs of Franks and its progeny, and the district court erred in not proceeding to an evidentiary hearing. Mack is thus entitled to reversal of his conviction on all counts and a remand for *de novo* consideration of his suppression motion.[4]

## POINT II

### THE DISTRICT COURT ERRED IN READING BACK ONLY EXCERPTS OF TWO DETECTIVES' DIRECT EXAMINATION, AND NOT THE CORRESPONDING CROSS-EXAMINATION, IN RESPONSE TO A JURY NOTE REQUESTING THEIR TESTIMONY ON A SPECIFIC TOPIC

Reversal is also required due to the multiple errors made in the district court's handling of the October 21, 2022 jury note. As discussed above, this note requested *inter alia* "the testimony of Officer Ripley's concerning the order of

---

[4] In its papers below, the government did not argue for the existence of any good-faith exception, and no such exception would apply where the search was overseen and executed by the same officer who made the false statement. See Falso, 544 F.3d at 125, citing Leon, 468 U.S. at 922-23 (good-faith exception does not apply where issuing magistrate has been knowingly misled). In any event, the applicability of any good-faith exception is an issue for an evidentiary hearing.

events getting into the Accord as well as Officer Cowan's testimony of the surveillance and the order of events getting into the Accord," and "clarity on the trap." The district court, without giving counsel an opportunity to be heard, construed the request for "clarity on the trap" as a request for additional evidence, and then, rather than reading back all of Ripley's and Cowan's testimony regarding the search, read back only the direct examination. This course of action was both procedurally and substantively improper.

In United States v. Ronder, 639 F.2d 931, 934 (2d Cir. 1981), this Court described it as "settled law that messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard *before* the trial judge responds" (emphasis added). This Court stated further:

> The proper practice should include these steps. (1) The jury's inquiry should be submitted in writing. This is the surest way of affording the court and counsel an appropriate opportunity to confer about a response. (2) Before the jury is recalled, the note should be marked as a court exhibit and be read into the record in the presence of counsel and the defendant. This avoids any later claim by the defendant that he remained unaware of the note's content, despite his counsel's knowledge of it. (3) Counsel should be afforded an opportunity to suggest appropriate responses… (4) After the jury is recalled, the trial judge should generally precede his response by reading into the record in their presence the content of any note concerning substantive inquiries.

Id.; see also United States v. Collins, 665 F.3d 454, 460 (2d Cir. 2012); United States v. Mejia, 356 F.3d 470, 475 (2d Cir. 2004). "Allowing counsel to be heard

reduces the risk that the trial court will respond in a way that prejudices one side." Collins, 665 F.3d at 460. Moreover, an error in this procedure should not "be ignored" even if defense counsel fails to suggest corrective action – which in any event, counsel in this case did. See Ronder, 639 F.2d at 935.

In this case, the first and fourth steps of Ronder were complied with, but not the second and, critically, not the all-important third. The second step of Ronder calls for the jury note to be read into the record in the presence of counsel and the defendant *before* the jury is recalled, but in this case, the district court did so only after the jury was already back in the courtroom. And far from allowing "[c]ounsel… an opportunity to suggest appropriate responses," Ronder, 639 F.3d at 934, the district court extemporized his response and conducted the readback without ever allowing counsel to be heard.

As this Court stated in Ronder, this would be a procedural error even if defense counsel did not suggest any further response. But in this case, counsel *did* have corrective action to suggest – namely, that the relevant parts of the cross-examination as well as the direct examination of Detective Ripley and Officer Cowan be read. Counsel was deprived of an opportunity to make this request, and to explain the reason for it, before the readback occurred, and thereby was deprived of the opportunity to ensure that *all* the relevant testimony that the jury requested was read back to them.

26

Moreover, the error here was not only procedural but substantive. The jury asked for "the testimony of Officer Ripley's concerning the order of events getting into the Accord as well as Officer Cowan's testimony of the surveillance and the order of events getting into the Accord" – in other words, it asked for "the testimony," not just "the direct testimony." The jury did not limit its request, but instead wanted to hear all the testimony of both officers that related to "the surveillance" and "the order of events getting into the Accord." Part of that testimony was, as discussed above in Part D of the Statement of the Case, contained in the two officers' cross-examination. Moreover, the meaning of the jury note is further elucidated by the request for "clarity regarding the trap" – language that the district judge appeared to interpret as a request for additional evidence but, in light of the arguments made in the defendant's summation, was plainly a request to hear testimony regarding the sequence of events by which the hidden compartment/trap was discovered and opened. There was thus no reasonable basis for the district court to, in essence, edit the jury's request by reading back only the direct testimony rather than all the testimony that was relevant to the subject matter they asked for.

While district courts are afforded some discretion in responding to jury notes, they are required to "consider the possibility that the readback might place undue emphasis on a particular portion of testimony read out of context." United

States v. McQuiller, 178 F. Supp. 3d 75, 84-85 (W.D.N.Y. 2016), quoting United States v. Criollo, 962 F.2d 241, 243-44 (2d Cir. 1992). "[P]roviding both direct and cross-examination testimony is an important step to prevent undue emphasis." United States v. Ramirez, 1997 WL 211294, *6 (9th Cir. 1997), citing United States v. Hernandez, 27 F.3d 1403, 1408 (9th Cir. 1994) and United States v. Nickell, 883 F.2d 824, 829 (9th Cir. 1989). Thus, where – precisely as here – a jury requested the testimony of certain witnesses concerning certain subject matter, but the district court read back only the direct testimony of those witnesses even though that subject matter was also addressed on cross, it was held to be reversible error. See Ramirez, 1997 WL 211294, *6. And this means that when the district court denied defense counsel's request at sidebar to read the relevant portions of Ripley's and Cowan's cross-examination too, it committed a second substantive error which compounded its initial violation of Ronder.

Nor can this sequence of errors be written off as harmless. Notably, this Court in Collins, supra, after discussing Ronder, cited case law indicating that harmless error does not apply if there is "any reasonable possibility of prejudice." See Collins, 665 F.3d at 460; see generally Chapman v. California, 386 U.S. 18, 23-24 (1967) (error of constitutional magnitude can only be disregarded if harmless beyond a reasonable doubt).[5] But even if a more deferential "fair

---

[5] Defendant submits that both Ronder errors and substantive errors in

28

assurance" standard were to apply, see Collins, 665 F.3d at 461, prejudice occurred in this case. As detailed in the Rule 33 motion, the jury note was closely tailored to the arguments made in the defendant's summation, in which he argued that the discrepancies concerning the sequence of events comprising the Accord search raised a reasonable doubt as to whether the evidence allegedly recovered from the trap had actually been there. And the cross-examination of Detective Ripley and Officer Crowder, as discussed above, contained testimony which elucidated these discrepancies – for instance, whether Ripley was present for the entire search or absent for the first 20 minutes, whether the trap was discovered by Ripley or by Sergeant Proud, whether Ripley ordered the search to proceed in the first place based on an incorrect belief that Cowan had personally observed Mack go into the Accord, and whether Proud, an officer found by his supervisors to have mishandled evidence at a search warrant scene, was ever in a position to be alone and tamper with the scene unobserved.

Furthermore, the jury returned a verdict only a short time after the readback. This Court has also held that prejudice may be inferred from a "swift verdict following the [district court's] response" to a jury note, see Mejia, 356 F.3d at 475

---

conducting readbacks implicate his Sixth Amendment rights to a fair trial and impartial jury, and that a Ronder error which, as here, involves deprivation of counsel's right to be heard also implicates his Sixth Amendment right to effective assistance of counsel.

– and notably, the time between the response and the verdict in this case, one hour and eight minutes (2020 Dkt. 116 at 622), is similar to <u>Mejia</u>, where it was fifty minutes, <u>see</u> <u>Mejia</u>, 356 F.3d at 477, and to <u>Kritsche v. Smith</u>, 662 F.2d 177, 180 (2d Cir. 1981), where it was one hour and twenty minutes. It is thus impossible to exclude, on this record, that the readback of Detective Ripley's and Officer Cowan's direct testimony, and only their direct testimony, resulted in the jurors' concerns being resolved in a way that unfairly favored the government and that led directly to a guilty verdict that might otherwise not have occurred. This Court should therefore find that the district court's response to the jury note requires reversal and a new trial on all counts.

## <u>CONCLUSION</u>

In light of the foregoing, this Court should issue an Order granting this appeal, reversing appellant Mack's conviction and sentence, and granting such other and further relief to appellant as it may deem just and proper.

Dated:       New York, NY
             February 18, 2025

                                          /s/ Jonathan I. Edelstein
                                          JONATHAN I. EDELSTEIN

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies pursuant to Fed. R. App. Pro. 32(a)(7)(C) as follows:

1.    This brief complies with the type-volume limitation of Fed. R. App. Pro. 32(a)(7)(B), as modified by Second Circuit Rule 32.1(a)(4)(A), because it contains 7,433 words exclusive of those parts of the brief exempted by Fed. R. App. Pro. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 2016 in Times New Roman 14-point type.

Dated:       New York, NY
             February 18, 2025

                              /s/ Jonathan I. Edelstein____
                              JONATHAN I. EDELSTEIN

Case: 24-618, 02/19/2025, DktEntry: 31.1, Page 37 of 45

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case    Case 5:20-cr-00182-DNH   Document 101   Filed 02/29/24   Page 1 of 7
Sheet 1

# UNITED STATES DISTRICT COURT

## Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| | Case Number:  DNYN5:20CR00182-001 |
| James Mack<br>aka "Kiko" | USM Number:  16502-052 |
| | Cory A. Zennamo<br>47 West Street, Suite 1<br>Ilion, NY 13357<br>315-520-8838 |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐  pleaded guilty to count(s)　　　of the on.
☐  pleaded nolo contendere to count(s)  which was accepted by the court.
☒  was found guilty on count(s) 1, 2, and 3 of the Indictment on October 21, 2022 after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B), & (b)(1)(C) | Possession with Intent to Distribute Controlled Substances (Cocaine Base and Cocaine) | 02/12/2020 | 1 |
| 18 U.S.C. § 924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime | 02/12/2020 | 2 |
| 18 U.S.C. §§ 922(g)(1) and 924(a)(2) | Felon in Possession of a Firearm | 02/12/2020 | 3 |

　　The defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed in accordance with 18 U.S.C. § 3553 and the Sentencing Guidelines.

☐  The defendant has been found not guilty on count(s)
☐  Count(s)　☐ is　☐ are　dismissed on the motion of the United States.

　　It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

February 14, 2024
Date of Imposition of Judgment

David N. Hurd
U.S. District Judge

February 29, 2024
Date

# Add. 1

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
Sheet 2 – Imprisonment

DEFENDANT:        James Mack
CASE NUMBER:   DNYN5:20CR00182-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**120 months on each of Counts 1 and 3, to run concurrently,
and 60 months on Count 2, to run consecutively to Counts 1 and 3,
for a total term of imprisonment of 180 months.**

☐  The court makes the following recommendations to the Bureau of Prisons:

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at  ☐ a.m.  ☐ p.m. on.

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

**I have executed this judgment as follows:**

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

_____
BY DEPUTY UNITED STATES MARSHAL

# Add. 2

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
Case 5:20-cr-00182-DNH  Document 101  Filed 02/29/24  Page 3 of 7
Sheet 3 – Supervised Release

Judgment – Page **3** of **7**

DEFENDANT:      James Mack
CASE NUMBER:   DNYN5:20CR00182-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

**8 years on Count 1, 5 years on Count 2, and 3 years on Count 3,**
**all counts to run concurrently for a total term of supervised release of 8 years.**

## MANDATORY CONDITIONS

1.  You must not commit another federal, state, or local crime.

2.  You must not unlawfully possess a controlled substance.

3.  You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐   The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4.  ☐ You must make restitution in accordance with 18 U.S.C. § § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.  ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(deselect if inapplicable)*

6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*


If this judgment imposes a fine or restitution, it is a condition of supervised release that you pay in accordance with the Schedule of Payments sheet of this judgment.


You must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# Add. 3

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
Sheet 3A – Supervised Release
Case 5:20-cr-00182-DNH   Document 101   Filed 02/29/24   Page 4 of 7

Judgment – Page **4** of **7**

DEFENDANT:     James Mack
CASE NUMBER:   DNYN5:20CR00182-001

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.  You must answer truthfully the questions asked by your probation officer.

5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the court determines in consultation with your probation officer that, based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk of committing further crimes against another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

# Add. 4

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
Sheet 3D – Supervised Release

Judgment – Page **5** of **7**

DEFENDANT:      James Mack
CASE NUMBER:   DNYN5:20CR00182-001

## SPECIAL CONDITIONS OF SUPERVISION

1. You shall participate in a program for substance abuse which shall include testing for use of controlled substances, controlled substance analogues, and alcohol. This may include outpatient treatment as recommended by the treatment provider based upon your risk and needs. You may also be required to participate in inpatient treatment upon recommendation of the treatment provider and upon approval of the Court. The probation office shall approve the location, frequency, and duration of outpatient treatment. You shall abide by the rules of any treatment program which may include abstaining from the use of any alcohol.

2. Based upon your history of substance abuse, and for the purpose of effective substance abuse treatment programming, you shall refrain from the use of alcohol and be subject to alcohol testing and treatment while under supervision.

3. You shall contribute to the cost of any evaluation, testing, treatment and/or monitoring services rendered in an amount deemed reasonable according to the sliding scale co-payment schedule approved by the Court and utilized by the U.S. Probation Office. You shall also cooperate with securing any available third-party payments as directed.

4. You must submit your person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you. Any items seized may be removed to the Probation release or unlawful conduct by you. Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

## DEFENDANT'S ACKNOWLEDGMENT OF APPLICABLE CONDITIONS OF SUPERVISION

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

The conditions of supervision have been read to me. I fully understand the conditions and have been provided a copy of them. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

_____          _____
Defendant                                                          Date

_____          _____
U.S. Probation Officer/Designated Witness              Date

# Add. 5

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
     Sheet 5 – Criminal Monetary Penalties

DEFENDANT:     James Mack
CASE NUMBER:    DNYN5:20CR00182-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **JVTA Assessment*** | **AVAA Assessment**** | **Fine** | **Restitution** |
|---|---|---|---|---|---|
| **TOTALS** | $300.00 | N/A | N/A | Waived | N/A |

☐   The determination of restitution is deferred until.  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

     If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **Totals** | | | |

☐   Restitution amount ordered pursuant to plea agreement   $

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐   the interest requirement is waived for the    ☐  fine   ☐  restitution.

     ☐   the interest requirement for the    ☐   fine    ☐  restitution is modified as follows:

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
**Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
***Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# Add. 6

AO 245B  NNY (Rev. 09/19) Judgment in a Criminal Case
      Sheet 6 – Schedule of Payments

Judgment – Page **7** of **7**

DEFENDANT:    James Mack
CASE NUMBER:   DNYN5:20CR00182-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☒  In full immediately; or

B  ☐  Lump sum payment of $ due immediately; balance due

      ☐  not later than, or

      ☐  in accordance with  ☐ D,  ☐ E,  ☐ F,  or  ☐ G below; or

C  ☐  Payment to begin immediately (may be combined with  ☐ D,  ☐ E, or  ☐ G below); or

D  ☐  Payment in equal  installments of $  over a period of, to commence  after the date of this  judgment; or

E  ☐  Payment in equal  installments of $  over a period of, to commence  after release from      imprisonment to a term of supervision; or

F  ☐  Payment during the term of supervised release will commence within  after release from imprisonment.  The court    will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

G  ☐  Special instructions regarding the payment of criminal monetary penalties:


Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to **Clerk, U.S. District Court, Federal Bldg., 100 S. Clinton Street, P.O. Box 7367, Syracuse, N.Y. 13261-7367,** or to pay electronically, visit www.nynd.uscourts.gov for instructions, unless otherwise directed by the court, the probation officer, or the United States attorney.  If a victim cannot be located, the restitution paid to the Clerk of the Court for that victim shall be sent to the Treasury, to be retrieved when the victim is located.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    ☐  Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.


    ☐  The Court gives notice that this case involves other defendants who may be held jointly and severally liable for payment of all or part of the restitution ordered herein and may order such payment in the future.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
    The items outlined in the Preliminary Order of Forfeiture.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA Assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

# Add. 7

# UNITED STATES DISTRICT COURT

## Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | (For **Revocation** of Probation or Supervised Release) |
| | Case Number:  DNYN509CR000688-001 |
| James  Mack | USM Number:  16502-052 |
| a/k/a Kiko | |
| | Cory A. Zennamo |
| | 47 West Street, Suite 1 |
| | Ilion, New York 13357 |
| | 315-520-8838 |
| | Defendant's Attorney |

## THE DEFENDANT:

☒  admitted guilt to violation number(s)          2 on 02/14/24                    of the term of supervision.

☒  the Court took judicial notice of numbers(s) to violation 1.

The defendant is adjudicated guilty of these offenses:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | New Criminal Conduct | 02/12/20 |
| 2 | Drug Use (methamphetamine) | 05/20/19 |

        The defendant is sentenced as provided in pages 2 through 2 of this judgment.  The sentence is imposed in accordance with 18 U.S.C. § 3553 and the Sentencing Guidelines.

☐  The defendant has not violated number(s) and is discharged as to such violation(s).

        It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec.: 2774

Defendant's Year of Birth: 1983

City and State of Defendant's Residence:
U.S. Marshal Custody

February 14, 2024
Date of Imposition of Judgment

David N. Hurd
U.S. District Judge

February 29, 2024
Date

**Add. 8**

AO 245D NNY (Rev. 09/19) Judgment in a Criminal Case for Revocation
Sheet 2 – Imprisonment

Judgment – Page **2** of **2**

DEFENDANT:      James  Mack a/k/a Kiko
CASE NUMBER:   DNYN520CR000182-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**37 months. There will be no term of supervised release to follow.**

☐   The court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐  at    ☐  a.m.  ☐  p.m. on:

    ☐  as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on.

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

**I have executed this judgment as follows:**

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

_____
BY DEPUTY UNITED STATES MARSHAL

# Add. 9